# UNITED STATES DISTRICT COURT
## for the
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America | **CRIMINAL COMPLAINT** |
| v. | Case No.: |
| Andrew Paul Amarillas | 26 - 3054 MJ |

I, Trevor A. Page, Special Agent of the Bureau of Alcohol, Tobacco, Firearms & Explosives, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

## COUNT 1
### Conspiracy to Possess and Sell Stolen Ammunition and Commit Theft of Government Property
### (18 U.S.C. § 371)

Beginning on or about February 1, 2022, and continuing through on or about November 20, 2025, in the District of Arizona and elsewhere, the defendant, ANDREW PAUL AMARILLAS, did knowingly combine, conspire, confederate, and agree with other persons known and unknown to commit the following offense against the United States of America: to wit, Theft of Government Property, in violation of Title 18, United States Code, Section 641, and Possession and Sale of Stolen Ammunition, in violation of Title 18, United States Code, Sections 922(j), 924(a)(2).

### OBJECTS OF CONSPIRACY TO POSSESS AND SELL STOLEN AMMUNITION AND COMMIT THEFT OF GOVERNMENT PROPERTY

The objects of the conspiracy were to steal property and ammunition from the U.S. military and sell the stolen U.S. military property and ammunition to others to earn money.

### MANNER AND MEANS OF CONSPIRACY TO POSSESS AND SELL STOLEN AMMUNTION AND COMMIT THEFT OF GOVERNMENT PROPERTY

The manner and means that ANDREW PAUL AMARILLAS, Co-Conspirators 1 and 2, and others known and unknown used to achieve the objects of the conspiracy included the following:

a. AMARILLAS—a Corporal in the U.S. Marines Corps—used his position as an Ammunition Technical Specialist at the School of Infantry West at U.S. Marine Corps Base Camp Pendleton in California to access and steal U.S. military property and ammunition, including at least one Javelin Missile System that was not demilitarized, M855A1 Enhanced Performance Round ("EPR") ammunition, and M855 non-EPR ammunition.

b.    AMARILLAS transported the stolen U.S. military property and ammunition from Camp Pendleton in California to Arizona and delivered and sold it to Co-Conspirators 1 and 2.

c.    Co-Conspirators 1 and 2 paid AMARILLAS for the stolen U.S. military property and ammunition that AMARILLAS stole, transported, and delivered to them.

d.    Co-Conspirator 2 sold the stolen U.S. military property and ammunition to the Chief Executive Officer ("CEO") of Company 2, and Company 2 sold it to others.

## OVERT ACTS

In furtherance of the conspiracy, and to achieve the objects of the conspiracy, ANDREW PAUL AMARILLAS, Co-Conspirators 1 and 2, and others known and unknown, committed or caused to be committed the following overt acts in the District of Arizona and elsewhere:

### Stolen U.S. Military Javelin Missile System

a.    In or about October 2024, AMARILLAS stole a Javelin Missile System with serial number 321675 from the School of Infantry West at Camp Pendleton in California.

b.    In or about October 2024, AMARILLAS transported that stolen Javelin Missile System from California to Arizona and delivered and sold it to Co-Conspirator 2 in Arizona.

c.    In or about October 2024, Co-Conspirator 2 delivered and sold that stolen Javelin Missile System to the CEO of Company 2 in Arizona, and he stored it at Company 2.

### Stolen U.S. Military M855A1 Enhanced Performance Round Ammunition

d.    Sometime on or before October 17, 2025, Co-Conspirator 2 obtained stolen cans of M855A1 EPR ammunition from Camp Pendleton in California.

e.    Sometime on or before October 27, 2025, Co-Conspirator 2 sold these stolen cans of M855A1 EPR ammunition to the CEO of Company 2 in Arizona.

### Stolen U.S. Military M855 Non-Enhanced Performance Round Ammunition

f.    In or about November 2025, AMARILLAS stole cans of M855 non-EPR ammunition from the School of Infantry West at Camp Pendleton in California.

g.    In or about November 2025, AMARILLAS transported stolen cans of M855 non-EPR ammunition from California to Arizona and delivered them to Co-Conspirators 1 and 2.

h.    In or about November 2025, Co-Conspirator 2 attempted to sell those stolen cans of M855 non-EPR ammunition from AMARILLAS to the CEO of Company 2 in Arizona.

All in violation of Title 18, United States Code, Section 371.

I further state that I am a Special Agent for the Bureau of Alcohol, Tobacco, Firearms & Explosives and that this complaint is based on the following facts:

**See Attachment Statement of Probable Cause, Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

REVIEWED BY AUSA: BRUCE R. VAN BAREN

Digitally signed by BRUCE VAN BAREN
Date: 2026.03.03 20:48:58 -07'00'

Special Agent Trevor A. Page
Name of Complainant

TREVOR PAGE
Digitally signed by TREVOR PAGE
Date: 2026.03.04 06:26:59 -07'00'

Signature of Complainant

Sworn to telephonically and signed electronically.

March 4, 2026
Date

at    Phoenix, Arizona
City and State

HONORABLE MICHAEL T. MORRISEY
United States Magistrate Judge
Name & Title of Judicial Officer

M Morrissey

Signature of Judicial Officer

## AFFIDAVIT OF PROBABLE CAUSE

I, Special Agent Trevor A. Page, being first duly sworn, hereby state:

## INTRODUCTION

1.    As described further below, this affidavit sets forth probable cause that beginning on or about February 1, 2022, and continuing through on or about November 20, 2025, in the District of Arizona and elsewhere, the defendant, ANDREW PAUL AMARILLAS, committed the crime of Conspiracy to Commit Theft of Government Property and Possession and Sale of Stolen Ammunition, a violation of 18 U.S.C. § 371.

## AGENT BACKGROUND

2.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), and I have been since on or about December 18, 2022. I graduated from the Federal Law Enforcement Training Center and the ATF National Academy. Based on my training, I am knowledgeable about investigating violations of federal criminal laws.

3.    Prior to becoming an ATF Special Agent, I was a Deportation Officer with Immigration and Customs Enforcement ("ICE") for two years. Prior to that, I was a Customs Officer with the U.S. Customs and Border Protection ("CBP") for three years.

4.    During my tenure with ATF, ICE, and CBP, I have been involved in numerous investigations of firearms-, narcotics-, and human-trafficking federal offenses. I have reviewed investigative reports, interviewed confidential sources, and spoken with senior law enforcement officers who have told me about common firearms trafficking schemes and explained their methods. As a result of my training and experience, I have become knowledgeable in the methods, language, and patterns that firearms traffickers use.

I have also learned about the techniques that they use to deter and hinder law enforcement investigations, including using multiple cellular phones, planned distribution schemes, firearm purchasing websites, false and/or fictitious identities, and "straw" purchasers.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, investigators, or witnesses. This affidavit is intended merely to show that there is sufficient probable cause for issuance of the complaint and does not set forth all of my knowledge about this matter. Statements recited are set forth in substance and in part unless otherwise indicated.

## SUMMARY OF PROBABLE CAUSE

6.      Defendant ANDREW PAUL AMARILLAS ("AMARILLAS") is a Corporal in the U.S. Marine Corps. He was stationed at Camp Pendleton in California from on or about February 2022 through January 2026. During this time, AMARILLAS was an Ammunition Technician Specialist responsible for U.S. military explosive and ammunition ordnance. During his entire tenure at Camp Pendleton, he was assigned to the School of Infantry West where he transported and handled U.S. military explosives and ammunition.

7.      AMARILLAS stole U.S. military property and ammunition for which he was responsible for safe keeping, transporting, and/or disposing at Camp Pendleton in California and transported these items to his home state of Arizona. Once in Arizona, AMARILLAS sold this stolen U.S. military property to Co-Conspirator 1 and Co-Conspirator 2. Co-Conspirators 1 and 2, in turn, sold them to Company 2 and others.

2

8.      The U.S. military property and ammunition that AMARILLAS agreed to steal and sell to others included Javelin Missile Systems and Olin Winchester-manufactured Enhanced Performance Rounds ("EPR") and non-EPR ammunition.

9.      Javelin Missile Systems are manufactured by the Javelin Joint Venture between Lockheed Martin Corp. and RTX Corp. f/k/a Raytheon Technologies Corp. exclusively for sale to the U.S. Department of Defense and cannot be legally possessed by, or sold to, the public unless demilitarized. Law enforcement seized one of the Javelin Missile Systems that AMARILLAS agreed to steal and sell. It was not demilitarized.

10.     Olin Winchester, LLC ("Olin Winchester") manufacturers EPR in 5.56mm ("M855A1") and 7.62mm ("M80A1") at a U.S. Government-owned, contractor-operated facility—the Lake City Army Ammunition Plant ("Lake City") in Independence, Missouri—and two contractor-owned and operated facilities in Oxford, Mississippi. M855A1 and M80A1 are federally controlled items that are limited to U.S. Government sales due to their increased terminal performance, making them a threat to law enforcement and civilians. M855A1 cannot be legally possessed by, or sold to, the public.

11.     Olin Winchester also manufactures non-EPR ammunition in 5.56mm ("M855"). Unlike M855A1 and M80A1, M855 can be bought directly from Olin Winchester and sold to the public, but M855 that was manufactured for, and sold to, the U.S. Department of Defense cannot legally be possessed by, or sold to, the public. M855 ammunition manufactured for, and sold to, the U.S. military is in different packaging than M855 ammunition manufactured for, and sold commercially to, the public.

12.     U.S. Marine Corps policy—on which Ammunition Technician Specialists at Camp Pendleton are trained—only permits the use, transport, and release of U.S. military property and ammunition for official military duties and prohibits any unauthorized use, transfer, or release of these items. AMARILLAS never obtained authorization from the U.S. military to remove Javelin Missile Systems and M855A1 and M855 from Camp Pendleton, transport them to Arizona, and sell them to civilians for his own profit.

## UNDERCOVER PURCHASES AND SEIZURES OF M855A1 AND M855 STOLEN FROM U.S. MILITARY

13.     During the time that AMARILLAS held the role of Ammunition Technician Specialist at the School of Infantry West at Camp Pendleton where he was assigned to handle and transport explosives and ammunition, law enforcement identified stolen U.S. military ammunition for sale commercially in Arizona and throughout the United States. Law enforcement purchased and seized stolen U.S. military M855A1 and M855 ammunition and seized a stolen U.S. military Javelin Missile System. Law enforcement traced the lot numbers of some of the M855A1 to Camp Pendleton and the School of Infantry West, the lot numbers of all the M855 to Camp Pendleton and some to the School of Infantry West, and the Javelin Missile System to Camp Pendleton and the School of Infantry West. Law enforcement also determined that AMARILLAS signed out the stolen U.S. military Javelin Missile System and some of the stolen U.S. military ammunition.[1]

_____

[1] Law enforcement is awaiting from Naval Criminal Investigative Service ("NCIS"), the results of the traces of the other lot numbers specifically to the School of Infantry West as well as the records showing whether AMARILLAS signed them out.

## Individual 1's Purchase of M855 from Company 2

14.    In or about March 2024, law enforcement interviewed Individual 1 who was selling cans of stolen M855 on a social media platform. According to Individual 1, he had bought two sealed cans of M855 from Company 2 in or about late 2023 and January 2024 at gun shows in Arizona. Company 2 is a Texas limited liability company in Glendale, Arizona that operates at gun shows across the country. Individual 1 said that Company 2 had pallets full of sealed ammunition cans like the ones he bought. The lot numbers on the cans of M855 that Individual 1 bought were LC-22L100-107 and WMA23D125-018. Law enforcement traced these lot numbers to Camp Pendleton and the School of Infantry West where AMARILLAS was responsible for explosives and ammunition ordinance.

## Undercover Purchases of M855A1 and M855 from Company 1

15.    Undercover law enforcement officers purchased stolen U.S. military M855A1 and M855 from Company 1—an Arizona limited liability company and federally licensed firearms dealer in Scottsdale, Arizona—on or about April 14, 2025, April 30, 2025, and May 1, 2025. On each date, the M855A1 and M855 was sold for more than $1,000. The cans of M855 had lot numbers WMA22L125-013 and LC-23D100-138. Law enforcement traced the lot numbers to Camp Pendleton. The M855A1 was not sold in a can of M855A1 with a lot number to be traced, but some of the M855A1 was sold in a can of stolen U.S. military M1 ammunition. This can of stolen U.S. military M1 had lot number WMA23H603-018. Law enforcement traced the lot number to Camp Pendleton. (Law enforcement has not yet further traced these lot numbers to the School of Infantry West.)

5

Undercover Purchases of M855A1 and M855 from Company 2

16.    In addition to Company 1, undercover law enforcement officers purchased stolen U.S. military M855A1 and M855 from Company 2 on or about September 7, 2024 and July 12, 2025. On each date, the M855A1 and M855 was sold for more than $1,000. The cans of M855 had lot numbers LC-23J100-187 and LC-23K100-188. Law enforcement traced the lot numbers to Camp Pendleton and the School of Infantry West. The M855A1 was not sold in a can of M855A1 with a lot number to be traced.

Seizure of M855A1 and M855 from Company 2

17.    On or about October 10, 2025 and October 17, 2025, law enforcement seized stolen U.S. military M855A1 and M855 that Co-Conspirator 2 had sold to the CEO of Company 2. Both were sold for more than $1,000. The M855A1 was not in a can of M855A1 but in a can of M855 with lot number WMA22L125-013. Law enforcement traced the lot number on this can to Camp Pendleton. Likewise, the M855 was not in a can of M855 but in a can of M855A1 with lot number LC-17C902-113. Law enforcement traced the lot number on this can to Camp Pendleton and the School of Infantry West.

Seizures of M855 from Co-Conspirator 2

18.    On or about November 20, 2025, law enforcement seized stolen U.S. military M855 that Co-Conspirator 1 and Co-Conspirator 2 had attempted to sell to the CEO of Company 2. Law enforcement seized ten sealed cans of M855 with lot number LC-24-D100-233, three unsealed cans of M855 with lot numbers LC-22L100-107, LC-23D100-138, and WMA22L125-013, and four sealed cans of MK-318 with lot number FC-18A810-

025. The cans of M855 were valued at more than $1,000. (Notably, the can of M855 with lot number LC-22L100-107 matched the lot numbers on the cans of M855 listed for sale on Company 1's website.) Law enforcement traced the lot numbers on all the cans of M855 to Camp Pendleton and further traced the ten sealed cans of M855 with lot number LC-24-D100-233 and three unsealed cans of M855 with lot numbers LC-22L100-107 to the School of Infantry West. Law enforcement also traced the lot number on the cans of MK-318 to Camp Pendleton and the School of Infantry West and confirmed that AMARILLAS had signed out cans of MK-318 with this same lot number on or about August 13, 2024.

## SEIZURE OF JAVELIN MISSILE SYSTEM STOLEN FROM U.S. MILITARY

19.    During the time that AMARILLAS held the role of Ammunition Technician Specialist at Camp Pendleton and was assigned to handle and transport of explosives and ammunition at the School of Infantry West, law enforcement also seized a Javelin Missile System with lot number MGP03D021-003C and serial number 321675 from the CEO of Company 2 on or about October 10, 2025. The Javelin Missile System had a value of more than $1,000. Law enforcement traced the serial number and lot number on the stolen U.S. military property to Camp Pendleton and the School of Infantry West and confirmed that AMARILLAS had signed out this Javelin Missile System on or about August 13, 2024.

## TEXT MESSAGES AMONGST AMARILLAS AND CO-CONSPIRATORS

20.    On or about November 20, 2025, law enforcement executed a search warrant on Co-Conspirator 2's home on Rosewood Lane in Phoenix, Arizona ("Rosewood Property"), and seized his phone (in addition to the stolen U.S. military M855 and MK-13

7

that it traced to Camp Pendleton and the School of Infantry West and that AMARILLAS signed out, as discussed above). Co-Conspirator 2's phone had numerous messages with AMARILLAS, Co-Conspirator 1, the CEO of Company 2, and others regarding their conspiracy to steal, possess, and sell stolen U.S. military property and ammunition. These text messages show that AMARILLAS agreed to steal U.S. military property and ammunition from Camp Pendleton, transport it to Arizona, and sell it to Co-Conspirator 1 and Co-Conspirator 2 who, in turn, sold it to the CEO of Company 1 and others.

Amarillas Drops Phone Used to Communication with Co-Conspirators 1 and 2

21.     About five days later, on or about November 25, 2025, AMARILLAS dropped the phone that he had been using to communicate with Co-Conspirator 1 and Co-Conspirator 2, according to phone records from his cellular telephone provider. On or about the same day, AMARILLAS obtained a new phone with a new service provider.

Amarillas's June and October 2024 Text Messages with Co-Conspirator 2
About Supplying M855A1 Stolen from U.S. Military

22.     On or about June 24, 2024, the owner and Chief Executive Officer of Company 2 text messaged Co-Conspirator 2, "Did your guy get back to you on the [M]855A1?" Co-Conspirator 2 responded, "Not yet but I asked him." Co-Conspirator 2 then sent the CEO of Company 1 screen shots of his text messages with AMARILLAS— who was saved in his contacts as "Andrew Ammo" with a call number that had been subscribed to AMARILLAS since about July 2024. In these text messages, Co-Conspirator 2 asked AMARILLAS if he could get "M855A1" for one of Co-Conspirator 2's customers. These screen shots that Co-Conspirator 2 sent did not show AMARILLAS's response.

8

23.    On or about October 30, 2024, Co-Conspirator 2 followed up with AMARILLAS asking if he could get him "five to ten boxes" of the M855A1. AMARILLAS told Co-Conspirator 2 he probably could not, explained that he had "been asking [and] waiting," and noted that he "[g]otta wait something else out [right now]."

<u>Co-Conspirator 2's October 2024 Sale of Javelin Missile System<br>Stolen from U.S. Military to CEO of Company 2</u>

24.    On the same day, on or about October 30, 2024, Co-Conspirator 2 sent the photograph below of an Anti-Tank (AT4) and Javelin Missile System to the CEO of Company 2 who agreed to purchase both stolen U.S. military property for $600. Co-Conspirator 2 told him that he purchased them from his source of supply for $500. Law enforcement traced the serial number and lot number of the Javelin Missile System in the photograph to Camp Pendleton and the School of Infantry West and seized the Javelin Missile System with this same serial number from Company 2. Law enforcement confirmed that AMARILLAS had signed out this Javelin Missile System.



<u>Co-Conspirator 1's June 2025 Text Messages with Co-Conspirator 2</u>
<u>About Javelin Missile Systems Amarillas Stole from U.S. Military</u>

25.    On or about June 20, 2025, Co-Conspirator 1 text messaged Co-Conspirator 2, "What's … up good sir[?] [W]hat are you up to today[?] Andrew leave that stuff with you[?] Co-Conspirator 2 responded, "No[,] he's supposed to text you and leave it with you. I'm not at home right now. Throw him a text." Co-Conspirator 1 responded, "Ok cool."

26.    Two days later, on or about June 23, 2025, Co-Conspirator 1 text messaged Co-Conspirator 2 an image of (1) a rifle with a scope sitting on the top of a large, plastic crate; (2) a rifle with a scope sitting on the top of a bed; and (3) the below photograph of two Javelin Missile Systems, and said, "Scope is on ready to go with ammo."



<u>Amarillas' Text Messages to Co-Conspirator 2</u>
<u>About Javelin Missile Systems He Stole from U.S. Military</u>

27.    On or about August 28, 2025, AMARILLAS text messaged Co-Conspirator 2 to tell him that he "just [got] some javs and some other ones[.]" He then further explained,

"[I] have 2 launchers that [I] think you'd like, if you want to take a look tomorrow." Co-Conspirator 2 responded, "I can[.] I still have the other one right now they're just not moving[.] I think [Co-Conspirator 1] still has the other one too." AMARILLAS responded, "[O]kay sounds good and dang, [I]'m hoping they move soon[.]" Co-Conspirator 2 responded, "Yeah, me too[.]" AMARILLAS asked him "when to drop by." Co-Conspirator 2 told AMARILLAS to come by later that day and sent the address of the Rosewood Property. AMARILLAS text messaged Co-Conspirator 2 when he arrived later that day.

### Amarillas' Text Messages to Co-Conspirator 2 About M855 He Stole from U.S. Military

28.    On or about November 2, 2025, AMARILLAS text messaged Co-Conspirator 2, "[I]t's on again," but that he's "not sure how much [I'm going to be] having but [I]'ll be by" and that he's "trying to stay consistent [u]ntil [I]'m gone." AMARILLAS was scheduled to leave Camp Pendleton for an eight-week training course in Quantico, Virginia from on or about January 12, 2026, through on or about March 6, 2026.

29.    Just over a week later, on or about November 8, 2025, Co-Conspirator 2 text messaged AMARILLAS, "What's up[?]" AMARILLAS responded, "[S]ome cans[.]" Co-Conspirator 2 asked, "How many[?]" AMARILLAS responded, "30[.]" Co-Conspirator 2 asked, "Ok how much[?]" AMARILLAS responded, "5[.]" Co-Conspirator 2 asked, "Stacks[?]" (i.e., thousands of dollars). AMARILLAS responded, "[Y]es sir[.]" He further explained that it was 25,000 rounds of ammunition total, "which is 30 cans[.]"

30.    Later that day, on or about November 8, 2025, Co-Conspirator 1 text messaged Co-Conspirator 2, "Heading to the house to meet up with Andrew now[.] Less

11

than an hour later, Co-Conspirator 1 text messaged Co-Conspirator 2, "Andrew came through. Got him squared up[.]" Co-Conspirator 1 also asked, "No word yet from [the CEO of Company 2?]" and sent the photograph below of 30 cans of M855. The cans of M855 in the photograph (at least where visible) had lot number LC-24D100-233. Law enforcement traced this lot number to Camp Pendleton and the School of Infantry West.



31.     On or about November 10, 2025, Co-Conspirator 1 text messaged Co-Conspirator 2, "Andrew is talking about bringing another 30[.] [C]ould you get them the next time he comes[?] I'm tapped[.] I told him either way I'll just pull them and hold for those when I move them[.] Co-Conspirator 2 responded, "Yeah I'm back now. I can grab them. Still nothing from [the CEO of Company 2.]" Co-Conspirator 1 asked, "What is good. Are you home now[?]" Co-Conspirator 2 responded, "Yes sir[.] I got 2500 for you[.]" Co-Conspirator 1 asked, "For what?" Co-Conspirator 2 responded, "Ammo[.]" And later, Co-Conspirator 2 text messaged AMARILLAS, "Yo, what's the word I heard you're getting more[?]" AMARILLAS responded, "[M]aybe this weekend coming up[.]"

32.    On or about November 15, 2025, Co-Conspirator 1 text messaged Co-Conspirator 2 the below photograph of 66 boxes of M855 and explained, "So [I] have 66 total now." Co-Conspirator 2 responded, "Yeah, where is he?" The M855 cans in the photograph (at least where visible) had the same lot number as those in the photograph Co-Conspirator 1 sent Co-Conspirator 2 on or about November 8, 2025. Law enforcement traced the lot number of the M855 to Camp Pendleton and the School of Infantry West.



33.    About eight hours later, on or about November 15, 2025, AMARILLAS text messaged Co-Conspirator 2 and asked, "[Y]ou home?" Co-Conspirator 2 responded, "Not yet running around with my granddaughter still go by I will tell my wife[.] AMARILLAS said, "[I] just don't remember where it's at[.] Co-Conspirator 2 sent him the Rosewood Property (again). Less than 20 minutes later, AMARILLAS text messaged Co-Conspirator 2, "[H]ere[.]" Co-Conspirator 2 responded, "Ok" and then confirmed about two hours later, "I got the bag of money on you, right[?]" AMARILLAS responded, "[Y]es."

34.     Two days later, on or about November 17, 2025, Co-Conspirator 2 text messaged the CEO of Company 2, "What's up, [CEO of Company 2]? It's [Co-Conspirator 2]. I got your new number from Jack. Hope all is been good. I got a 30 pack. They want 300 apiece. Let me know if that's something you wanna do." The CEO of Company 2 didn't respond. The next day, on or about November 18, 2025, Co-Conspirator 2 called the CEO of Company 2, but he didn't answer. The next day, on or about November 19, 2025, Co-Conspirator 2 text messaged the CEO of Company 2, "Hello are you back from Vegas?" The CEO of Company 2 didn't respond. The next day, on or about November 20, 2025, law enforcement executed a federal search warrant on the Rosewood Property and seized 10 cans of M855. Law enforcement confirmed that the lot number of the M855 matched the lot number of the M855 in the photographs above that Co-Conspirator 1 sent Co-Conspirator 2 after AMARILLAS dropped off this stolen U.S. military ammunition.

## CONCLUSION

35.     Based on the foregoing, there is probable cause to conclude that beginning on or about February 1, 2022, and continuing through on or about November 20, 2025, in the District of Arizona and elsewhere, the defendant, ANDREW PAUL AMARILLAS, committed the crime of Conspiracy to Commit Theft of Government Property and Possession and Sale of Stolen Ammunition, in violation of 18 U.S.C. § 371.

36.     This affidavit is being sworn telephonically and signed electronically before a U.S. Magistrate Judge who is legally authorized to administer an oath for this purpose. I

have thoroughly reviewed the affidavit and attest that there is sufficient evidence to establish probable cause that the defendant committed the crimes alleged.

Pursuant to 28 U.S.C. § 1746(2), I, Special Agent Trevor A. Page, declare that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

TREVOR PAGE  Digitally signed by TREVOR PAGE
Date: 2026.03.04 06:27:57 -07'00'

_____
TREVOR A. PAGE
Special Agent, Bureau of Alcohol,
Tobacco, Firearms & Explosives

Subscribed electronically and sworn telephonically this 4 day of March, 2026.

M Morrissey

_____
HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge

15